1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JUANA DE FALCON, | ) 1:06cv0010 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **BACKGROUND**

Plaintiff San Juana De Falcon ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her applications for supplemental

security income and disability insurance benefits pursuant to Title XVI and Title II of the Social

Security Act.  The matter is currently before the Court on the parties' briefs, which were

submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate

Judge.[1]

///

///

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On June 9, 2006, the
Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

1

## FACTS AND PRIOR PROCEEDINGS[2]

2    Plaintiff filed her applications for supplemental security income on August 11, 2003, and

3    her application for disability insurance benefits on September 2, 2003. AR 85-88, 370-373. She

4    alleged disability since September 30, 2002, due to ovarian cancer, and kidney and bladder

5    problems. AR 146. After being denied both initially and upon reconsideration, Plaintiff

6    requested a hearing before an Administrative Law Judge ("ALJ"). AR 55, 60-64, 65. On May

7    25, 2005, ALJ Mark Ramsey held a hearing. AR 420-458. ALJ Ramsey denied benefits on

8    September 21, 2005. AR 12-20. The Appeals Council denied review on November 22, 2005.

9    AR 7-10.

10    Hearing Testimony

11    _____ALJ Ramsey held a hearing on May 25, 2005, in Bakersfield, California. Plaintiff

12    appeared with her attorney, James Yaro. Plaintiff was assisted by an interpreter. AR 381.

13    Plaintiff testified that she was 56 years old at the time of the hearing. She is married and

14    lives with her husband and two daughters. AR 384, 388. Her husband does not work. AR 385.

15    Plaintiff arrived in the United States in 1991 and is a resident alien. She has had no

16    schooling, except for a short time in Mexico. AR 385. Her prior work included picking and

17    packing grapes. AR 386. She had to lift 25 to 30 pounds in that job. AR 386. She also cleaned

18    cotton. AR 386. Most recently, she worked packing boxes of oranges and fruit. AR 387. She

19    had to lift 35 to 50 pounds in that position. AR 388. She last worked on September 30, 2002,

20    when she stopped because of kidney problems. AR 388.

21    _____Plaintiff testified that her daughters do most of the daily household chores. Plaintiff

22    sometimes puts the clothes in the washer, and sometimes cooks meals twice a week. AR 389.

23    She grocery shops every two weeks with her husband and one daughter. Plaintiff sometimes

24    goes to church on Sundays. AR 390. She sometimes walks. AR 391. She can only walk for ten

25    minutes, twice a week, because her knees hurt a lot. While she is at home, she watches television

26    and lays down. AR 391. Plaintiff takes numerous medications for her pain. AR 392-393.

27

28          [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    _____When questioned by her attorney, Plaintiff indicated that she did not complete any

2    schooling and cannot read or write in English.  AR 393.  She can read and write very little in

3    Spanish.  AR 394.

4    _____Plaintiff testified that she stopped working in 2002 because of bladder and kidney

5    infections.  She was on medication and had to undergo three procedures to check her bladder.

6    AR 395.  She has a lot of sharp pain in her abdominal area, and has trouble sleeping because of

7    the pain.  AR 396.  Her pain medications make her sleepy.  AR 397.  Bending hurts her more,

8    and she has problems standing and walking.  She has to "hold on" to stand up.  Plaintiff also has

9    problems with constipation and urgency.  AR 398.

10   Plaintiff believed that she could not return to her past work because she cannot climb

11   ladders and her medications make her sleepy.  AR 398.

12   _____Medical Record

13   _____In March 2000, Plaintiff underwent corrective surgery for cervical cancer with a

14   satisfactory result and no recurrence.  AR 161-203.

15   On March 8, 2002, Plaintiff complained of abdominal pain, rectal bleeding and

16   constipation.  AR 280-281.  Also on that day, T. Firozi, M.D., performed a colonoscopy with

17   biopsy.  Dr. Firozi recommended that Plaintiff have a CT scan of her abdomen and pelvis to rule

18   out a gynecological cause of her pain, and to take Metamucil for constipation.  AR 282.

19   In October 2002, a bladder biopsy revealed that Plaintiff had chronic interstitial cystitis

20   ("IC").  AR 225-226.

21   On October 28, 2002, Dr. Chi examined Plaintiff.  He noted that she had been on a pain

22   medication for IC without much improvement.  AR 240.  She appeared well-developed, well-

23   nourished and in no acute distress.  AR 240.

24   Also on October 28, 2002, Plaintiff underwent a surgical procedure indicating that her IC

25   had been somewhat exacerbated by bacterial cystitis.  There was no evidence of a tumor or stone.

26   AR 242-243.

27   On March 12, 2003, Dr. Chi performed a second surgical procedure.  234-238.

28

3

On December 8, 2003, Plaintiff was examined by Tomas B. Rios, M.D.  She complained of pain in her back and a history of ovarian cancer and kidney problems.  He noted that there were no medical records to review.  Plaintiff reported that she lived with her family, drove and was independent in activities of daily living.  On examination, Plaintiff was well developed and well nourished, and in no acute distress.  She moved about the room with ease.  Her abdomen was protuberant, but there was no guarding, rigidity or palpable mass.  Examination of her back showed good lumbar flexion/extension mobility.  She had slight tenderness along the lumbosacral area.  Her motor strength was 5/5 in both upper and lower extremities.  Her grip strength was bilaterally strong and adequate.  Plaintiff was obese, but her bulk and tone were symmetric.

Dr. Rios diagnosed chronic back pain and a history of ovarian cancer, status post bilateral oophorectomy.  He opined that Plaintiff's allegation of labor restricting complications from chronic back pain was significant only by areas of tenderness on palpatory examination.  Nonetheless, he concluded that Plaintiff should be precluded from activities that require repetitive bending and stooping.  He noted that her ovarian cancer has been in remission.  AR 293-296.

On January 22, 2004, State Agency physician George W. Bugg, M.D., completed a Medical Residual Functional Capacity Assessment form.  He opined that Plaintiff had no exertional limitations, but could occasionally stoop.  AR 297-304.  This opinion was affirmed on April 8, 2004.  AR 304.

In February 2004, Plaintiff requested a referral to a bone specialist for arthritis pain.  AR 337.

On April 23, 2004, Plaintiff was examined by Warren Becker, M.D.  Dr. Becker diagnosed Plaintiff with kidney stones and referred her to a urologist.  AR 314-315.

On October 18, 2004, Plaintiff complained of pain in both knees.  She was given Tylenol #3.  AR 330.

On March 30, 2005, Plaintiff was seen for complaints of lower back pain that did not respond to oral medications.  AR 327.

1    In May 2005, Plaintiff complained of shoulder and back pain.  She was given medication

2  and sent home to rest.  AR 332.

3    ALJ's Findings

4    The ALJ found that Plaintiff's IC, obesity and osteoarthritis were severe impairments.

5  AR 17.  Despite these impairments, the ALJ determined that Plaintiff could perform unlimited

6  exertional activity involving occasional stooping.  AR 18.  The ALJ found that Plaintiff could

7  return to her prior work as a packer/sorter.  AR 19.

8  ## SCOPE OF REVIEW

9    Congress has provided a limited scope of judicial review of the Commissioner's decision

10  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

11  the Court must determine whether the decision of the Commissioner is supported by substantial

12  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

13  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

14  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

15  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

16  401.  The record as a whole must be considered, weighing both the evidence that supports and

17  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

18  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

19  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

20  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

21  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

22  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

23  Cir. 1987).

24  ## REVIEW

25    In order to qualify for benefits, a claimant must establish that he is unable to engage in

26  substantial gainful activity due to a medically determinable physical or mental impairment which

27  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

28  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (IC, obesity and osteoarthritis) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; but (4) retains the RFC to perform her past relevant work as a packer/sorter.  AR 19-20.

Here, Plaintiff argues that the ALJ (1) failed to adequately address the severity of her IC pursuant to SSR 02-2p; and (2) improperly relied on medical reports that failed to identify and discuss her IC, making the RFC assessment inadequate.

## DISCUSSION

A.      SSR 02-2p

Plaintiff contends that a review of SSR 02-2p reveals that the ALJ failed to adequately address Plaintiff's testimony regarding her abdominal pain and the effect it had on her ability to function.

SSR 02-2p provides guidance for evaluating IC, and explains that IC, when accompanied by appropriate symptoms, signs, and laboratory findings, is a medically determinable impairment that can be the basis for a finding of disability.  Specifically, it provides:

> IC can cause limitation of function. The functions likely to be limited depend on many factors, including urinary frequency and pain. An individual may have limitations in any

---

[3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It also may affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to tolerate extreme heat, humidity, or hazards also may be affected.

Plaintiff's argument revolves around the ALJ's rejection of her testimony.  As she points out, "unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. Cir. 1998).  In rejecting the claimant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In his opinion, the ALJ reviewed Plaintiff's testimony, but concluded that the objective medical evidence did not support Plaintiff's allegations of pain.  AR 18, 19.  He explained that other than the tenderness in her back, there were few objective medical findings that would reasonably support any additional limitations.  AR 18.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (medical evidence is a factor that the ALJ can consider in credibility analysis).  Although Plaintiff had IC, there is no indication in the record that it affected her ability to work.  The ALJ explained that the evidence shows that both her urological infections and cancer have

1  been successfully treated.  AR 18.  *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 2003)

2  (impairments that can be reasonably controlled with treatment or medication cannot serve as a

3  basis for disability).  As to her back pain, Dr. Rios' examination revealed good lumbar

4  extension/flexion mobility and Plaintiff was able to move about the room with ease.  AR 294.

5  The ALJ also noted that Plaintiff's daily activities are inconsistent with her allegations of

6  pain.  AR 18.  The ALJ is entitled to consider Plaintiff's daily activities in evaluating her

7  credibility.  *Thomas,* 278 F.3d at 958.  He found that although Plaintiff relied on family members

8  for some assistance, she was able to engage in a wide range of daily activities.  AR 18.  During

9  her consultive examination with Dr. Rios, Plaintiff indicated that she was independent in her

10  activities of daily living, yet she testified to a number of restrictions.  AR 293.  The ALJ may

11  question a claimant's credibility when she previously reported less severe symptoms.  *Moncada*

12  *v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995).

13  Plaintiff appears to place too much weight on SSR 02-2p.  Although the ruling sets forth

14  numerous symptoms, it doesn't translate into a finding that Plaintiff actually *had* any or all of the

15  symptoms.  The ruling is merely a guide and in no way relates to how Plaintiff experienced her

16  condition.

17  B.    RFC Assessment

18  Next, Plaintiff contends that the ALJ erred in relying on the reports of Dr. Rios and Dr.

19  Bugg because their reports did not mention IC or any resulting limitations.

20  First and foremost, the mere diagnosis of an impairment is not sufficient to sustain a

21  finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  The fact that Plaintiff

22  has IC, alone, does not necessarily mean that she has any resulting limitations sufficient enough

23  to establish disability.  It is the limitations that result from the impairments that lead to a finding

24  of disability.  So, that Dr. Rios and Dr. Bugg didn't mention Plaintiff's IC is irrelevant where

25  they assessed all of her limitations.

26  The ALJ set forth Dr. Rios' findings and gave his opinion that Plaintiff had no limitations

27  other than a preclusion from frequent bending and stooping, considerable weight.  AR 17, 18.

28  He found his opinion to be well-supported and uncontradicted.  AR 18.  Interestingly, Plaintiff

1   did not include IC in her history when talking to Dr. Rios.  In any event, Dr. Rios performed a

2   full evaluation of Plaintiff's physical complaints.  Objectively, his examination revealed that

3   Plaintiff was well developed, well nourished, and in no acute distress.  She moved about the

4   room with ease.  Although her abdomen was protuberant, there was no guarding, rigidity or

5   palpable mass.  Her back had good lumbar flexion/extension mobility, although there was slight

6   tenderness along the lumbosacral area.  Her motor strength was 5/5 in both upper and lower

7   extremities, and her grip strength was bilaterally strong and adequate.  Plaintiff was obese, but

8   her bulk and tone were symmetric.  AR 293-295.

9        Dr. Rios therefore performed a full assessment of Plaintiff's functions.  Any limitations

10  would have been discovered, regardless of their cause.  In other words, even though he didn't

11  mention Plaintiff's IC, his examination would have revealed any limitations resulting therefrom.

12  A consultive examiner's opinion is substantial evidence, especially where it is uncontradicted.

13  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

14       Similarly, the ALJ explained that Dr. Bugg's opinion was uncontradicted.  AR 18.  Dr.

15  Bugg reviewed the medical evidence and determined that Plaintiff had no exertional limitations,

16  but could occasionally stoop.  AR 297-304.  This opinion is consistent with the medical record as

17  a whole.  Other than Dr. Rios, no other doctor suggested that Plaintiff would have any

18  limitations.  Again, Dr. Bugg examined all of Plaintiff's limitations, regardless of their source.

19  The ALJ may rely on the opinions of State Agency physicians if the opinions are well-supported

20  and consistent with the medical record as a whole.  20 C.F.R. § 404.1527(f); *Morgan v. Comm'r*

21  *Soc. Sec.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ can rely on the testimony of a nonexamining

22  medical advisor).

23       Insofar as Plaintiff argues that the ALJ failed to discuss how her IC affects her functional

24  capacity, her argument fails.  The ALJ found Plaintiff's IC to be a severe impairment and stated

25  that he "carefully evaluated the claimant's interstitial cystitis pursuant to Social Ruling 02-2p,

26  which indicates this disorder may meet or equal the listings."  AR 17.  He continued, "[a]lthough

27  clearly a medically determinable impairment in view of the reported signs and findings, it is not

28  of the severity to meet any of the listed impairments."  AR 17.

1   Again, the fact that Plaintiff has IC does not mean that the ALJ automatically has to find related

2   limitations, as she seems to suggest.  Instead, Dr. Rios' examination only found tenderness in

3   Plaintiff's back, and he precluded activities that require repetitive bending and stooping.  AR

4   293-296.

5           Plaintiff also appears to contend that the ALJ failed to follow SSR 96-8p, which sets forth

6   the process for determining RFC, by failing to discuss how Plaintiff's IC affects her RFC.

7   However, as discussed above, the ALJ did assess Plaintiff's IC and, based on the medical

8   evidence, correctly concluded that it did not result in any impairments.

9           Finally, Plaintiff seems to suggest that since she can perform only occasional, not

10  repetitive stooping, that she is thus precluded from medium exertional positions.  Plaintiff cites

11  SSR 83-10, which sets forth the process of determining whether a claimant can perform other

12  work at step five of the sequential evaluation process.  However, the ALJ did not proceed to step

13  five in this case because he found, at step four, that Plaintiff could perform her past relevant

14  work.  Pursuant to Plaintiff's work history reports, her first packer/sorter position required only

15  minimal stooping. AR 139, 140.  Based on this, the ALJ determined at step four that Plaintiff

16  could perform her past relevant work.  AR 17-18.  Given this determination, the ALJ did not

17  need to move on to step five.

18                                        **CONCLUSION**

19          Based on the foregoing, the Court finds that the ALJ's decision is supported by

20  substantial evidence in the record as a whole and is based on proper legal standards.

21  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

22  Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

23  favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff,

24  San Juana De Falcon.

25          IT IS SO ORDERED.

26      **Dated:   November 22, 2006**                    **/s/ Dennis L. Beck**
        3b142a                                      UNITED STATES MAGISTRATE JUDGE
27

28

                                                10